**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JOSE FRANCISCO SERRANO GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>JASON KNIGHT, *et al.*,<br><br>Respondents. | Case No. 2:25-cv-02081-RFB-BNW<br><br>**ORDER** |

**I.   INTRODUCTION**

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act (INA) to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in thirty similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025

executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter

---

WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK (D. Nev. Dec. 8, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Patel v. McShane, No. CV 25-5975, 2025 WL 3241212, at *1 (E.D. Pa. Nov. 20, 2025) (collecting at least 282 decisions from district courts finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief granted to all class members holding that they are being detained without a bond hearing unlawfully. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner is currently detained without the opportunity for release on bond in the custody of Federal Respondents at Nevada Southern Detention Center (NSDC), pursuant to this new detention "policy." He asserts the application of § 1225(b)(2) to him is unlawful under the INA, and his arrest and detention violates the Due Process Clause of the Fifth Amendment. He seeks a writ of habeas corpus requiring that he be released unless Respondents provide him with a bond hearing under § 1226(a) within seven days of the Court's Order. For the reasons set forth below, the Petition is granted and the Court orders Respondents to provide Petitioner a constitutionally adequate bond hearing by **December 15, 2025,** or release him.

## II.  PROCEDURAL HISTORY

On October 24, 2025, Petitioner filed his Petition for a Writ of Habeas Corpus. ECF No.

1. On October 29, 2025, this case was transferred to the undersigned Judge as related to two pending putative class actions pending before the Court. ECF No. 12. On October 29, 2025, the Court ordered Respondents to show cause why the Writ should not be granted and enjoined Respondents from transferring Petitioner out of the District of Nevada to preserve its jurisdiction over Petitioner's claims. ECF No. 15.

On November 3, 2025, Respondents counsel filed a notice of appearance and emergency motion for an extension of time to respond to the Order to Show Cause, citing the need for additional time due to the shutdown of the federal government. ECF No. 17. Petitioner opposed the requested extension, noting Respondents failed to meet and confer regarding the emergency request as required under LR IA 7-4(a)(3), and because he was prejudiced by an extension given his ongoing detention. ECF No. 19. Respondents filed their Return to the Order to Show Cause on November 5, 2025. ECF Nos. 21-22.

On November 6, 2025, counsel for Respondent John Mattos appeared and filed a joinder to the Return. ECF Nos. 23-24. The same day Petitioner filed his Traverse, which asked the Court to strike Respondents' filings for failure to comply with Local Rules and this Court's scheduling order. ECF No. 26.

The Court's Order follows.

### III.   BACKGROUND

#### A.  Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

The Court makes the following findings of fact relevant to Petitioner.

#### B.  Petitioner Serrano Gonzalez

Petitioner is a citizen of Mexico who has resided in the United States since 2001. He lives with his wife in Idaho, and his three U.S. citizen children, ages 22, 16, and 2. According to

Petitioner, his only criminal conviction is for petty theft over a decade ago. According to the Form I-213 provided by Respondents, he was arrested for multiple nonviolent misdemeanors from 2005 to 2010, but there is no record of those arrests leading to charges or convictions. See ECF No. 22-1 at 3.

He has been detained by DHS for over six weeks. He was arrested on October 19, 2025 as part of a law enforcement raid at a lawful horse race in Wilder, Idaho. An ICE Deportation Officer stated that ICE officers questioned him and determined on the scene that he was "not in possession of valid immigration documents allowing him to be or remain in the United States legally." ECF No. 22-1 at 3. ICE charged him with, *inter alia*, being inadmissible as "an alien present in the United States without being admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Id. Petitioner is unable to obtain a bond hearing due to Hurtado.

### IV.   LEGAL STANDARDS

#### A.  § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025)

(describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**V.  DISCUSSION**

As an initial matter, the Court grants Respondents' Emergency Motion to Extend Time (ECF No. 17) to file their Return, *nunc pro tunc*, and declines to strike Respondents' filings. Under Federal Rule of Civil Procedure 6(b), a court may "for good cause," extend a deadline so long as the request is made before the original deadline. Fed. R. Civ. P. 6(b)(1)(A). The Court finds that this request was made prior to the Respondents' original deadline of November 3, 2025, and that there was good cause sufficient to grant Respondents' brief, two-day extension to November 5, 2025, given the federal government shutdown and associated widespread furloughs that were ongoing at the time of the request.

**A.  Jurisdiction**

The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted). Respondents do not challenge the Court's jurisdiction over the instant case.

**B.  Administrative Exhaustion**

Respondents argue the Court should dismiss this case because Petitioner has not exhausted his administrative remedies. The Court fully incorporates by reference its prior finding that

- 6 -

administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

### C. Statutory Question

Petitioner Serrano Gonzalez challenges the lawfulness of his detention under the INA. While Respondents assert that § 1225(b)(2) applies to Petitioner and mandates his detention without a bond hearing, Petitioner argues Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is flawed, contradicting both the statutory framework and the decades of agency practice applying § 1226(a) to people like Petitioner. This Court agrees with Petitioner and incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

Petitioner is a longtime U.S. resident—he has been in the United States for nearly 25 years—who was arrested and detained by ICE in Wilder, Idaho, far from any port of entry. In addition, Petitioner has no criminal convictions that would subject him to detention under § 1226(c). Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22.

### D. Due Process

Petitioner also challenges his ongoing detention without the opportunity for release on bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge on this basis. Respondents assert that Petitioner's due process rights are not violated by detention without opportunity for release on bond, citing to the Supreme Court's upholding of detention without bond hearings under § 1226(c) in Demore. See ECF No. 21 at 2-3, 19 (citing Demore, 538 U.S. at 522, 531). However, Demore's holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In

addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where Petitioner has no criminal convictions. Furthermore, the government has not shown it has an individualized purpose in detaining Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the opportunity for release on bond in violation of his procedural and substantive due process rights.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged

detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond hearing for a petitioner prior to Hurtado and found that the government had not established a justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that Petitioner Serrano Gonzalez has no criminal convictions, has deep financial, familial, and community ties in the country, and that Respondents have not asserted he is dangerous or a flight risk, the Court finds that he is being arbitrarily and unjustifiably deprived of his liberty.

The additional procedures afforded under § 1226(a), including an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special

circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total

daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and therefore, his detention without the opportunity for release on bond violates his procedural due process rights.

### 2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty.  Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### E. Scope of Relief

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

Here, Petitioner faces the specific harm of being detained for months without a bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing by **December 15, 2025**. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

### F. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act

(EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **December 15, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

In the event that bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded 45 days from the date of release to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **December 15, 2025**, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **December 16, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS FURTHER ORDERED** that Respondents' Motion to Extend Time (ECF No. 17) is **GRANTED**, *nunc pro tunc*.

**DATED:** December 9, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**